UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STRYKER CORPORATION, et al.,

                Plaintiff,                          Hon. Robert Holmes Bell

v.                                              Case No. 1:14-cv-01000-RHB

WILLIAM PRICKETT, et al.,

                Defendants.
_____/

## REPORT AND RECOMMENDATION
## REGARDING STRYKER'S MOTION FOR CONTEMPT

This matter is before the Court on Stryker Corporation and Stryker Sales Corporation's (collectively Stryker) motion for contempt against defendants William Prickett and Physician's Choice Medical Repair, Inc. (PCMR). (ECF No. 107). Stryker accuses defendants of violating the Court's October 22, 2014, preliminary injunction (ECF No. 24) and the Court's December 18, 2014, order compelling defendants to produce certain discovery (ECF No. 40). (Pltfs' Br. at 1, ECF No. 108, PageID.656). Defendants oppose the motion. (*See* ECF No. 144). The Honorable Robert Holmes Bell referred this matter to me on June 21, 2016.

On July 11, 2016, I conducted a hearing on this matter, at which counsel for both parties attended. (Minutes, ECF No. 148). Having considered the parties' oral and written submissions, and for the reasons stated herein, I find that there is clear and convincing evidence that defendants have violated terms of the preliminary injunction and the compulsion order. Accordingly, I certify the facts contained in this report and

recommendation for purposes of the Certification of Civil Contempt and Order to Show Cause (ECF. No. 153), which is being filed in conjunction herewith.[1]   Further, I recommend that the Honorable Robert Holmes Bell grant Stryker's motion for contempt against defendants William Prickett and PCMR (ECF No. 107) in part and to deny it in part, and that he adjudge defendants to be in civil contempt.   I also recommend that Judge Bell consider imposing sanctions as set forth below.

## Procedural History

Mr. Prickett's contumacious conduct in this case has been consistent and long-standing.   The pending motion for contempt must be viewed in this context. Accordingly, this report and recommendation sets out in some detail the procedural history that documents Mr. Prickett's disregard both of this Court's authority and his discovery obligations under the Federal Rules of Civil Procedure.

Stryker filed this action on September 23, 2014, claiming that William Prickett breached his confidentiality and non-competition agreement with Stryker; that both defendants infringed Stryker's trademarks; that both defendants engaged in unfair competition; and that both defendants unjustly enriched themselves. (Complaint, ECF No. 1).   Stryker also sought a temporary restraining order and a preliminary injunction.  (ECF No. 5).   The next day, the Court issued an Order to Show Cause,

---

[1]Pursuant to 28 U.S.C. § 636(e)(6)(B), where "[an] act constitutes civil contempt, the magistrate judge shall forthwith certify the facts to a district judge and may serve or cause to be served upon any person whose behavior is brought into question . . . an order requiring such person to show cause why that person should not be adjudged in contempt by reason of the facts so certified."

denying the motion for a temporary restraining order and setting an October 22, 2014, show-cause hearing on the motion for preliminary injunctive relief.  (ECF No. 13).  The Court directed Stryker to serve a copy of the complaint, the motion for injunctive relief with the brief in support, and the show-cause order on defendants no later than October 3, 2014.  (*Id.*, PageID.147).  Stryker's counsel effected service by email, Federal Express, and U.S. mail on September 24, 2014.  (Proof of Service, ECF No. 14).

On the same day it filed the complaint, Striker sought limited, expedited discovery.  (ECF No. 7).  The Court scheduled a hearing on the motion for October 9, 2014, and directed Stryker to serve a copy of the scheduling order on defendants no later than October 3, 2014.  (Order, ECF No. 15).  Stryker's counsel effected service by email, Federal Express, and U.S. mail on September 26, 2014.  (Proof of Service, ECF No. 16).  Defendants failed to appear at the October 9, 2014, hearing.  (Minutes, ECF No. 17).  The Court granted Stryker's motion in part and denied it in part.  (*See* Order, ECF No. 19).

On October 9, 2014 – the same day he failed to appear at the hearing on Stryker's motion for expedited discovery – Mr. Prickett filed a response in opposition to plaintiffs' motion for preliminary injunctive relief.  (ECF No. 18).[2] Mr. Prickett filed a motion to dismiss the complaint on October 17, 2014.  (ECF No. 22).[3]

---

[2]Mr. Prickett mailed the response to the Court.  His response is dated October 6, 2014 (*see* ECF No. 18, PageID.156), presumably the date he placed it in the mail.

[3]His motion is dated October 15, 2014 (*see* ECF No. 22, PageID.174), presumably the date he placed it in the mail.

On October 22, 2014, Mr. Prickett failed to appear at the preliminary injunction hearing (Minutes, ECF No. 26), despite having been served with the scheduling order. Instead, he waited until that day to file a motion to continue the hearing.  (ECF No. 25).  The Court denied Mr. Prickett's motion to dismiss, as well as his untimely motion for a continuance.  (Oct. 22, 2014, Mem. Op. and Order, ECF No. 27).

After a hearing in which two witnesses testified (Minutes, ECF No. 26), the Court granted Stryker's motion for a preliminary injunction.  (Oct. 22, 2014, Preliminary Injunction, ECF No. 24).  The preliminary injunction provided, in pertinent part, that defendants were prohibited from:

> ♦ engaging in or participating in any preventative maintenance, service or repairs on any Stryker patient handling equipment, beds, cots, stretchers, treatment tables or hospital furniture for any hospital or customer for which Prickett provided such maintenance, service or repair during the 24 months preceding Prickett's termination of employment with Stryker on June 30, 2014;

> ♦ engaging in or participating in any employment or activity competitive with Stryker, insomuch as such activity is with, directed to or designed to provide services to, solicit or divert any of Stryker's customers and/or any customers that Prickett serviced while in Stryker's employ during the 24 months prior to June 30, 2014; [and]

> ♦ contacting, soliciting, diverting, continuing to service any of Stryker's customers diverted from Stryker to PCMR directly or indirectly from the efforts of Prickett and/or PCMR, and/or continuing to attempt to contact, solicit, divert or service any Stryker customers[.]

(*Id.*, ¶¶ 4-6, PageID.206).

-4-

On December 9, 2014, Stryker filed its first motion to hold Mr. Prickett in contempt for violating the terms of the preliminary injunction. (ECF No. 31). Stryker alleged, among other things, that Mr. Prickett was "continu[ing] to solicit and service Stryker customers and represent to said customers that he is 'Stryker Certified' in the North Carolina Territory in direct violation of this Court's Order." (*Id.*, ¶ 7, PageID.222). This motion was supported by a declaration of James Barbee, a Stryker Field Representative for Central North Carolina, who provided testimony regarding Mr. Prickett's continued servicing of Stryker beds after the entry of the preliminary injunction. (Barbee Decl., ECF No. 34).

Also on December 9, 2014, Stryker filed a motion to compel discovery. (ECF No. 32). This motion related to the expedited discovery authorized by the Court on October 9, 2014 (*see* Order, ECF No. 19, PageID.164), which was served on Mr. Prickett the next day (*see* ECF No. 32-1), as well as discovery requests served on October 29, 2014 (*see* ECF No. 32-2). In response to interrogatories relating to communications he may have had with Stryker customers, or other entities to which he used the term "Stryker" or represented himself as a "Stryker-Certified" service representative, since June 30, 2014,[4] Mr. Prickett asserted his Fifth Amendment right against incrimination. (*See* ECF No. 32-1, PageID.247-51). Mr. Prickett also asserted his Fifth Amendment right against self incrimination in response to the related document

---

[4]According to the complaint, Mr. Prickett resigned from his position as a Stryker Field Service Technician on June 30, 2014. (ECF No. 1, PageID.1; *see also* Amended Complaint, ECF No. 84, PageID.497).

requests. (*See id.*, PageID.253-57). He otherwise failed to respond to any of the discovery requests. (*See* ECF No. 32, PageID.242). PCMR failed to respond to any discovery request. (*See id.*).

Neither Mr. Prickett nor PCMR responded to Stryker's motion to compel discovery. Instead, on December 12, 2014, Mr. Prickett filed a "Motion to Dismiss: New Discoveries," in which he complained that Stryker was deliberately withholding information. (ECF No. 37, PageID.296). He also asserted that a document he had recently obtained from Stryker supported his contention that his employment had been terminated on June 27, 2008. (*Id.*, PageID.297-98; *see also* ECF No. 37-1 (Exhibits A & C)). The Court denied the motion. (Feb. 20, 2015, Order, ECF No. 65).

On December 18, 2014, the Court conducted a hearing on Stryker's motion to compel discovery; neither defendant appeared. (Minutes, ECF No. 39). After reviewing the record and Stryker's supporting documentation, the Court granted the motion to compel to the extent it sought answers to the interrogatories and document requests served on October 10 and 29, 2014, respectively. (*See* Dec. 18, 2014, Order, ECF No. 40, PageID.314). With respect to Mr. Prickett's reliance on the Fifth Amendment, the Court noted:

> [Mr.] Prickett has failed to articulate a valid basis for his blanket assertion of his Fifth Amendment right against self-incrimination. A valid assertion of the Fifth Amendment privilege requires " '*reasonable* cause to apprehend a *real* danger of incrimination' "; not merely an " 'imaginary, remote or speculative possibility of prosecution.' " *Bank One of Cleveland, N.A. v. Abbe*, 9016 F.2d 1067, 1077 (6th Cir. 1990) (quoting *In re Morganroth*, 718 F.2d 161, 167 (6th Cir. 1983)) (emphasis supplied). "A blanket assertion of the privilege by a witness is not sufficient to meet the reasonable cause requirement . . . ." *Id.*

(ECF No. 40, PageID.313-34).

Due to defendants' failure to appear at the December 18, 2014, hearing, the Court issued an order to show cause why they should not be held in contempt. (ECF No. 41). The show-cause hearing was scheduled for January 8, 2015. (*Id.*, PageID.315). On January 6, 2015, Mr. Prickett filed a motion to appear at the show-cause hearing by telephone or video conferencing. (ECF No. 43). The next day, the Court denied the motion, noting the gravity of the matter and Mr. Prickett's prior conduct regarding court appearances.[5] (Order, ECF No. 44, PageID.320).

On January 8, 2014 – approximately two hours before the hearing – the Court received by overnight mail Mr. Prickett's motion to continue the show-cause hearing. (ECF No. 46; *see* Jan. 9, 2015, Order, ECF No. 47, PageID.324). Stryker's counsel, who had already traveled to Grand Rapids from Chicago, appeared at the show-cause hearing; neither defendant appeared. (*See* Minutes, ECF No. 45; Order, ECF No. 47, PageID.324). At the hearing, Stryker's counsel objected to Mr. Prickett's motion for continuance, and he orally moved for sanctions against both defendants. (*See* Jan. 9, 2015, Order, ECF No. 47, PageID.324-25). The Court granted Mr. Prickett's motion for continuance and took Stryker's oral motion for sanctions under advisement pending an opportunity for defendants to respond. (*Id.*, PageID.325). The show-cause hearing was rescheduled to January 27, 2015. (*Id.*).

---

[5]Mr. Prickett failed to appear for an October 22, 2014, hearing on plaintiffs' motion for a preliminary injunction. (*See* Minutes, ECF No. 26). He also failed to appear at the December 18, 2014, hearing on plaintiffs' motion to compel discovery. (*See* Minutes, ECF No. 39).

Mr. Prickett appeared for the January 27, 2015, show-cause hearing. (Minutes, ECF No. 52). He advised the Court that he failed to appear for the December 18, 2014, hearing because he was unable to make travel arrangements to come to Grand Rapids on that date. When asked why he did not file a motion to adjourn the hearing, or otherwise contact the Court, Mr. Prickett stated: "I really didn't understand that I needed to."[6] When pressed to explain how an individual of his intelligence would not have understood the need to contact the Court regarding his non-appearance, Mr. Prickett repeatedly reasserted his contention that he lacked any understanding of the need to file a motion or to otherwise contact the Court. He also stated that he did not know how to file a motion with the Court.

As noted in my January 28, 2015, Report and Recommendation, Mr. Prickett's statements to the Court were not credible:

> On October 9, 2014, Mr. Prickett filed a response in opposition to plaintiffs' motion for a preliminary injunction [ECF No. 18]. On October 17, 2014, Mr. Prickett filed a motion to dismiss the complaint, in which he included argument with citation to legal authority, and to which he appended four exhibits [ECF No. 22]. More to the point, on October 22, 2014, Mr. Prickett filed a motion seeking a continuance of a hearing scheduled before the Honorable Robert Holmes Bell [Dkt. 25], two full months before the December 18, 2014, hearing at issue here.

> Mr. Prickett admitted, during the show-cause hearing that he filed these motions, *pro se*, without the assistance of counsel. His previous actions in this regard rebut his contended ignorance regarding both the need to file a motion and the process for doing so.

(ECF No. 53, PageID.339-40).

---

[6]The January 27, 2014, show-cause hearing was recorded, and the audio recording is available for review or transcription.

Mr. Prickett's credibility was further undermined when he was caught making a false statement to the Court concerning the contents of an email he sent Stryker's counsel the day before the show-cause hearing. (*See id.*, PageID.340). I recommended that Mr. Prickett be held in contempt for his failure to appear for the December 18, 2014, hearing. (*Id.*, PageID.341). Mr. Prickett filed no objections.

Judge Bell scheduled a hearing for February 20, 2015, on Stryker's motion for contempt for defendants' violations of the preliminary injunction, as well as my Report and Recommendation regarding Mr. Prickett's failure to appear at the December 18, 2015, hearing. (Notice, ECF No. 57). Mr. Prickett failed to appear for that hearing. (Minutes, ECF No. 66).

Judge Bell found Mr. Prickett in contempt, both for his failure to appear at the December 18, 2014, hearing on Stryker's motion to compel discovery and for his violations of the terms of the preliminary injunction. (Feb. 20, 2015, Order, ECF No. 63, PageID.392). Judge Bell issued an arrest warrant to have Mr. Prickett brought before the Court. (*See id.*, PageID.393; Arrest Warrant, ECF No. 64, 67). Mr. Prickett was arrested on March 10, 2015, in North Carolina, and he was transported by the United States Marshal's Service to this district. (Rule 5 Documents, ECF No. 68). He appeared before Judge Bell on March 31, 2015, and he was released from custody on that date. (Minutes, ECF No. 71). Mr. Prickett was required to repay the cost of transporting him from North Carolina to Michigan. (April 2, 2015, Order, ECF No. 72). Mr. Prickett retained counsel, who made his appearance on March 31, 2015. (*Id.*).

## Discussion

Stryker asks that defendants be held in criminal contempt because their violations of the preliminary injunction and the discovery order were "willful," and because Mr. Prickett compounded his misconduct by making false statements in written discovery and in his deposition.  (Pltfs' Br. at 7-8, ECF No. 108, PageID.662-63).  In the alternative, Stryker asks that defendants be held in civil contempt.  (*Id.* at 9-10, PageID.664-65).

It is settled law that federal courts have the inherent authority to punish those who violate court orders.  *See, e.g., Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 831 (1994).  "Courts independently must be vested with 'power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates, and . . . to preserve themselves and their officers from the approach and insults of pollution.' "  *Id.* (quoting *Anderson v. Dunn*, 6 Wheat. 204, 227, 5 L. Ed. 242 (1821)).  The Supreme Court described the nature and necessity of the contempt power in *Gompers v. Buck's Stove & Range Co.*:

> [W]hile it is sparingly to be used, yet the power of courts to punish for contempts is a necessary and integral part of the independence of the judiciary, and is absolutely essential to the performance of the duties imposed on them by law.  Without it they are mere boards of arbitration, whose judgments and decrees would be only advisory.
>
> If a party can make himself a judge of the validity of orders which have been issued, and by his own act of disobedience set them aside, then are the courts impotent, and what the Constitution now fittingly calls the 'judicial power of the United States' would be a mere mockery.

221 U.S. 418, 450 (1911).

Under the Federal Rules of Civil Procedure, the Court has discretion to impose a number of sanctions for violations of its discovery orders. *See* FED. R. CIV. P. 37(b)(2)(A). Among those sanctions are "treating as contempt of court the failure to obey any [such] order." FED. R. CIV. P. 37(b)(2)(A)(vii). In addition, "the court must order the disobedient party . . . to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." FED. R. CIV. P. 37(b)(2)(C).

Criminal contempt is governed by 18 U.S.C. § 401.[7] It provides, in pertinent part, that federal courts "shall have power to punish by fines or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as . . . [d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command." *Id.* Civil contempt, however, remains a creature of the court's inherent power. *See Spallone v. United States*, 493 U.S. 265, 276 (1990) ("[T]he District Court [is] entitled to rely on the axiom that 'courts have inherent power to enforce compliance with their lawful orders through civil contempt.'" (quoting *Shillitani v. United States*, 384 U.S. 364, 370 (1966)). "Contempts are neither wholly civil nor altogether criminal. And 'it may not always be easy to classify a particular act as belonging to either one of these two classes. It

---

[7]If the Court pursues criminal contempt, it must appoint a prosecutor and afford the accused a jury trial. *See* FED. R. CRIM. P. 42(a); *see also Bloom v. State of Illinois*, 391 U.S. 194, 210 (1968) (holding that those charged with criminal contempt have a right to a jury trial, unless it is being pursued as a "petty" offense (one punishable by incarceration of six months or less)).

may partake of the characteristics of both.'" *Gompers*, 221 U.S. at 441 (quoting *Bessette v. W.B. Conkey Co.*, 194 U.S. 324, 329 (1904)).

The principle purpose of criminal contempt is punitive, "to vindicate the authority of the court." *Gompers*, 221 U.S. at 441. Civil contempt, on the other hand, is remedial and is imposed "for the benefit of the complainant." *Id.*; *see also United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04 (1947) (The purpose of civil contempt is "to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." (citing *Gompers*, 221 U.S. at 448, 449)). "[A] contempt is considered civil when the punishment is wholly remedial, serves only the purposes of the complainant, and is not intended as a deterrent to offenses against the public." *McCrone v. United States*, 307 U.S. 61, 64 (1939). In addition, "[t]he award of attorney's fees and expenses to a successful movant may be appropriate in a civil contempt proceeding." *TWM Mfg. Co. v. Dura Corp.*, 722 F.2d 1261, 1273 (6th Cir. 1983).

Given the facts and circumstances of this case, I recommend that the Court address defendants' contumacious conduct through civil contempt. Civil contempt will most effectively remediate the harm caused by defendants' misconduct; it will vindicate the Court's orders; and it will provide the necessary incentive to obtain defendants' future compliance with the preliminary injunction.

The standards for civil contempt are well established. The party seeking civil contempt has "the burden of establishing by clear and convincing evidence that [the alleged contemnors] 'violated a definite and specific order of the court requiring [them]

to perform or refrain from performing a particular act or acts with knowledge of the court's order.'" *Rolex Watch U.S.A., Inc. v. Crowley*, 74 F.3d 716, 720 (6th Cir. 1996) (quoting *N.L.R.B. v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 590 (6th Cir. 1987)).  Based on the evidence in the record, Stryker has met its burden for civil contempt.

### A.   Certified Facts Relating to Defendants' Contemptuous Conduct

I make the following factual findings, which support the imposition of civil contempt sanctions:

In pertinent part, the October 22, 2014, preliminary injunction prohibited defendants from engaging in certain conduct relating to "any hospital or customer for which Prickett provided such maintenance, service or repair during the 24 months preceding Prickett's termination of employment with Stryker on June 30, 2014." (Preliminary Injunction, ¶¶ 4-5, ECF No. 24, PageID.206).  The prohibited conduct included providing "preventative maintenance, service or repairs on any Stryker patient handling equipment, beds, cots, stretchers, treatment tables or hospital furniture"; and engaging in any competitive activity "directed to or designed to provide services to, solicit or divert any of Stryker's customers."  (*Id.*).

Mr. Prickett received a copy of the preliminary injunction, and he has acknowledged that he understood the terms as set out above.  (*See* Prickett Dep. at 78-79, ECF No. 108-4, PageID.736).  As to the injunction against engaging in competitive activity with Stryker, Mr. Prickett claims that his "lay interpretation" of the relevant provision is that he was restricted "only from those [Stryker] customers he serviced while in Stryker's employ during the 24 months prior to June 30, 2014."  (Defs' Br. at

6, ECF No. 144, PageID.1217). Mr. Prickett cites to what he describes as the "disjunctive language" of the relevant provision in support of his interpretation. (*Id.*).

Mr. Prickett's stated "interpretation" is, at best, dubious. The provision to which he refers plainly prohibits him from engaging in certain competitive activity with "any of Stryker's customers ***and/or*** any customers that Prickett serviced while in Stryker's employ" during the last 24 months of his employment with Stryker. (Preliminary Injunction at ¶ 5, ECF No. 24, PageID.206) (emphasis supplied). It is unclear how anyone could construe the language "and/or" as simply "disjunctive."

The docket sheet reveals that Mr. Prickett did not seek clarification of the scope of the preliminary injunction. The Court speaks through its orders, and Mr. Prickett "interpreted" the preliminary injunction at his own peril. At any rate, the belated distinction that Mr. Prickett attempts to make is not pivotal, as the evidence demonstrates that he violated the terms of the preliminary injunction, even under his stated interpretation.

1. <u>Defendants violated the preliminary injunction in continuing to service Stryker patient handling equipment at Wilson Medical Center.</u>

Wilson Medical Center has been a long-standing Stryker customer in Stryker's Central North Carolina field service area. (*See* Barbee Decl. ¶¶ 2-3, ECF No. 34, PageID.287). Mr. Prickett worked as a Technical Specialist in Central North Carolina (Durham, North Carolina, area) "conduct[ing] preventative maintenance and repairs to patient handling equipment and technologies, as well as selling service contracts to Stryker customers" until he resigned in June 2014. (Answer to Amended Complaint

¶ 3, ECF No. 88, PageID.557-58).  Stryker has submitted documentation regarding accounts that Mr. Prickett serviced during the 24 months preceding his resignation, including one from Wilson Medical Center with a service date of September 27, 2013. (Supp. Exh. L. ECF No. 138-1, PageID.1192-94).[8]

Mr. Prickett's claimed lack of "recollection" of servicing "Wilson Medical Hospital" during the last 24 months he worked for Stryker (Prickett Affidavit ¶ 3, ECF No. 144-1, PageID.1222) is both immaterial and incredible.[9]  It is immaterial, as civil contempt does not require a showing of willfulness.  *See Rolex Watch*, 74 F.3d at 720 ("Willfulness is not an element of civil contempt, so the intent of a party to disobey a court order is 'irrelevant to the validity of [a] contempt finding.' " (quoting *In re Jaques*, 761 F.2d 302, 306 (6th Cir. 1985)).  His claimed lack of memory is incredible in light of his deposition testimony in which he falsely denied his continued work for Wilson Medical Center, and in light of the fact that he continued to service Wilson Medical Center after being put on notice that it violated the preliminary injunction.

On December 10, 2014, James Barbee, a Stryker Field Representative for Central North Carolina, submitted a declaration regarding Mr. Prickett's continued servicing of Stryker beds after the entry of the preliminary injunction.  (Barbee Decl.,

---

[8]The exhibit filed at ECF No. 138-1 is largely unreadable.  Stryker's counsel provided the Court and defendants' counsel with a more readable, unredacted version by e-mail.  The Court has filed that version under seal, as it contains proprietary information.  (Sealed Unredacted Supplemental Exhibit L, ECF No. 151).

[9]It is unclear why Mr. Prickett used the term "Wilson Medical Hospital" in his affidavit, rather than the correct name, "Wilson Medical Center," as his many invoices reflect.  (*See* ECF No. 108-6).

ECF No. 34).  Mr. Barbee testified that he met with a service representative from Wilson Medical Center on December 2, 2014, after he observed a decrease in the number of parts orders and repair requests from that facility.  (*Id.*, ¶¶ 4-5, PageID.287).  A Wilson Medical Center representative advised Mr. Barbee that Mr. Prickett was continuing to service the facility's Stryker beds and stretchers, and that he was continuing to sell Stryker repair parts.  (*Id.*, ¶¶ 6-7, PageID.287-88).

On December 4, 2014, Mr. Prickett was seen outside Wilson Medical Center, and he was driving a vehicle bearing the name "Physician's Choice Medical Repair."  (*Id.*, ¶ 10, PageID.288).  On December 8, 2014, Mr. Barbee photographed a trailer bearing a Stryker OBGYN stretcher that was in Mr. Prickett's driveway, and a Stryker Secure II bed that was in Mr. Prickett's open garage.  (*Id.*, ¶¶ 11-13; Exhibits C & D, PageID.292 (photographs)).  The Wilson Medical Center representative informed Mr. Barbee that Mr. Prickett had taken a Stryker Secure II bed to repair, the same model later seen in Mr. Prickett's garage.  (*Id.*, ¶ 14).

Mr. Prickett was deposed on August 11, 2015.  (Prickett Dep. at 1, ECF No. 108-4, PageID.717).  He testified that he did not park his vehicle at Wilson Medical Center on December 2, 2014, and that he did not remove a bed from that facility on that date to repair it.  (*Id.* at 80, PageID.736).  Mr. Prickett also testified that he did not recall having been at Wilson Medical Center on December 4, 2014.  (*Id.* at 81, PageID.737).

He categorically denied, however, taking any beds to his home from Wilson Medical Center at any time in December 2014 or January 2015. (*Id.* at 82, PageID.737).[10]

In addition to the Barbee declaration, Mr. Prickett's deposition testimony is contradicted by the 120-some pages of invoices reflecting work he did through his business, PCMR, repairing beds, stretchers, and related patient-handling equipment at Wilson Medical Center.[11]   These invoices date from November 12, 2014, approximately three weeks after entry of the preliminary injunction, to December 24, 2015. (ECF No. 108-6, PageID.857-975).   These include invoices for the work Mr. Prickett did repairing hospital beds at Wilson Medical Center on December 2 and 4, 2014 (*id.*, PageID.863, 865), the dates he was specifically asked about in his deposition. (*See* Prickett Dep. at 80-81, ECF 108-4, PageID.736-37).

It is worth noting that the Barbee declaration was filed on December 10, 2014 (*see* ECF No. 34), which would have put Mr. Prickett on notice that, at least from Stryker's perspective, his continued servicing of Wilson Medical Center patient-handling equipment violated the preliminary injunction.   Rather than contesting

---

[10]Mr. Prickett claims that the Stryker Secure II bed, which matched the model he reportedly took from the Wilson Medical Center days earlier to repair, was the bed upon which his mother died in Arkansas. (Prickett Dep. at 85-86, ECF No. 108-4, PageID.738).   He further claims that he transported the bed from Arkansas to his North Carolina home for its "symbolic" value. (*Id.*).   The coincidence suggested by his testimony strains credulity, particularly in light of his later acknowledgment that he intended to use the bed's parts to "grow" his business. (*Id.* at 107-08, PageID.743).

[11]In a Rule 30(b)(6) deposition, a representative testified on April 19, 2016, that Mr. Prickett had been repairing Stryker beds at the Wilson Medical Center in affiliation with PCMR from August or September 2014 through the date of the deposition. (Greene Dep. at 1-6, 9-11, ECF No. 108-11, PageID.1029-31).

Stryker's assertion in that regard, Mr. Prickett simply continued servicing beds at the medical center.  Moreover, at no point in his August 11, 2015, deposition – taken eight months after the Barbee declaration – does Mr. Prickett point out his belief that he was legally entitled to do repair work at Wilson Medical Center.  Instead, he falsely denied doing any work for Wilson Medical Center since August 2014.  (*See* Prickett Dep. at 100, ECF No. 108-4, PageID.741) (testifying that he produced no PCMR invoices for Wilson Medical Center because he had done no work for the center since PCMR's inception in August 2014).

This suggests consciousness of guilt.  *See Eley v. Erickson*, 712 F.3d 837, 848 (3d Cir. 2013) ("[E]vidence of a false statement may support an inference that it was 'made with an intent to divert suspicion or to mislead the police or other authorities, or to establish an alibi or innocence,'" (quoting *Commonwealth v. Kravitz*, 400 Pa. 198, 161 A.2d 861, 870 (1960)); *Al-Adahi v. Obama*, 613 F.3d 1102, 1107 (D.C. Cir. 2010) (noting "the well-settled principle that false exculpatory statements are evidence – often strong evidence – of guilt" (citing *United States v. Penn*, 974 F.2d 1026, 1029 (8th Cir. 1992); *United States v. Meyer*, 733 F.2d 362, 363 (5th Cir. 1984)).  There appears to be no rational basis for denying work he performed at Wilson Medical Center if Mr. Prickett believed he was legally entitled to do it.

2.     Defendants violated the preliminary injunction in
       continuing to service Stryker patient handling equipment at
       Nash General Hospital.

During the last 24 months of his employment with Stryker, Mr. Prickett serviced

Nash General Hospital on at least four occasions.[12]   (Supp. Exh. L, ECF No. 138-1,

PageID.1186-91, 1195-1201 (*see also* ECF No. 151 (sealed))).   Through a third-party

subpoena, Stryker obtained more than thirty invoices indicating that Mr. Prickett and

PCMR serviced Stryker medical equipment at Nash General Hospital from July 2014

to August 2015.   (Exh. E, ECF No. 108-5, PageID.768-828; *see* O'Neill Dep. at 25, ECF

No. 108-9, PageID.1010 (attesting that invoices "were validated in terms of what pieces

and parts on them were related to repairs on Stryker beds").   These included eighteen

invoices that post-date the October 22, 2014, preliminary injunction.   (*See* Exh. E, ECF

No. 108-5, PageID.793-98, 804-28 (invoices dated between October 23, 2014, through

January 7, 2016)).

In his August 11, 2015, deposition, Mr. Prickett testified that neither he nor

PCMR had done any work for Nash General Hospital since the PCMR's inception in

August 2014.   (Prickett Dep. at 100, ECF No. 108-4, PageID.741).   Mr. Prickett

specifically denied having submitted a proposal to provide preventative maintenance

and service work on beds at the hospital.   (*Id.* at 88, PageID.738).

---

[12]The parties have referred to this hospital as simply "Nash" (*see* Pltfs' Br. at 4-5, ECF No. 108, PageID.659-60), or "Nash General Hospital" (Defs' Br. at 4, ECF No. 144, PageID.1215).   This Report and Recommendation will use the latter, even though some variations of the name appear on the invoices.   (*See, e.g.,* ECF No. 108-5, PageID.772 ("Nash Health Care System")).

Mr. Prickett's deposition testimony is contradicted by the invoices referenced above, one of which is dated July 14, 2015 – less than a month before his deposition – indicating that he repaired a Nash General Hospital bed.  (Exh. E, ECF No. 108-5, PageID.821 ("I was able to repair [the bed's head lift] assembly offsite. . . .").  It is also contradicted by the Rule 30(b)(6) deposition of a representative of Nash Hospitals, Inc., who testified that Mr. Prickett negotiated and signed a contract with Nash General Hospital in October 2015 on behalf of PCMR to provide maintenance and repair services for hospital beds.  (Holmes Dep. at 1-8, 11-22, ECF No. 108-8, PageID.994-99).  That contract covered the period of the 2015 calendar year, and it was renewed to cover calendar year 2016.  (*Id.* at 21, 27, PageID.999-1000).

Mr. Prickett's prevarications regarding whether he or PCMR had done any work for Nash General Hospital since August 2014, significantly undermine his current claim of not being able to recall "servicing or calling upon Nash General Hospital . . . at any time during the 24 months prior to [his] final departure from Stryker on June 30, 2014." (Prickett Affidavit at ¶ 3, ECF No. 144-1, PageID.1222).  As noted above, this may be considered as evidence of consciousness of guilt.  Moreover, his purported lack of recollection is immaterial to the determination of civil contempt.  "Willfulness is not an element of civil contempt."  *Rolex Watch*, 74 F.3d at 720.

3.  <u>Defendants violated the preliminary injunction in continuing to service Stryker patient handling equipment at Atlantic Gastroenterology.</u>

In a Rule 30(b)(6) deposition on June 17, 2016, a representative of Atlantic Gastroenterology testified that Mr. Prickett was the regular Stryker field service

representative prior to 2014.  (Moye Dep. at 1-11, ECF No. 108-10, PageID.1019-21; *see also id.* at 11 (noting that Mr. Prickett had been providing service on behalf of Stryker for more than three years, and "probably" more than five years)).  The witness also testified that Atlantic Gastroenterology uses only Stryker stretchers, and that it has six.  (*Id.* at 9, 18, PageID.1021, 1023).  Mr. Prickett entered into a two-year service agreement with Atlantic Gastroenterology on behalf of PCMR to service and repair Stryker stretchers; the agreement covers the time period October 1, 2014, through September 30, 2016.  (*Id.* at 15-18, PageID.1022-23; *see also* Exh. G, ECF No. 108-7, PageID.977-80 (copy of service agreement)).  Mr. Prickett discounted the cost of the agreement from that previously charged by Stryker, which influenced Atlantic Gastroenterology's decision to enter into a contract with Mr. Prickett, as opposed to renewing its contract with Stryker.  (Moye Dep. at 19, PageID.1023).

Stryker obtained, through a third-party subpoena, copies of invoices from PCMR to Atlantic Gastroenterology, dated July 25, 2014, through August 17, 2015.  (Exh. G, ECF No. 108-7, PageID.981-92).  Six of the PCMR invoices are dated August 17, 2015, for pressure-washing each of Atlantic Gastroenterology's six Stryker stretchers, each indicating that the work was performed pursuant to the service agreement.  (*Id.*, PageID.981-86).  Other PCMR invoices contain notes indicating that the service and repair work was performed by Mr. Prickett.  (*Id.* at PageID.987-92).

In his August 11, 2015, deposition, Mr. Prickett admitted having serviced Atlantic Gastroenterology on behalf of Stryker prior to leaving Stryker's employment in June 2014.  (Prickett Dep. at 124-25, ECF No. 108-4, PageID.747-48).  He also

acknowledged entering into a service agreement with that entity, and that he received a payment of $5,600, which he deposited into his personal checking account.  (*Id.* at 125-26, PageID.748).  Mr. Prickett's testimony in this regard is tantamount to an admission that he violated the preliminary injunction.

4.      Defendants violated the Court's discovery order.

Among the discovery requests subject to the December 18, 2014, compulsion order (ECF No. 40) was Stryker document request 5:  "Any and all Communications, between January 1, 2014, to present, between you and any Stryker customer to whom you provided services while employed as a Field Service Representative for Stryker." (Exh. B at 3, ECF No. 108-2, PageID.692).[13]  In response to this document request, Mr. Pricket identified three customers, stating:

> Since June 28, 2014, Defendants had contact with Stryker customers: Jim Parris, Veterans Affairs Durham Hospital; Brad Ray, Veteran's Affairs Durham Hospital; Jeff Armstrong, Wakemed Mobile Care; and Justin Gibbs, Hyde County Emergency Services.

(*Id.*).

Mr. Prickett produced fourteen pages of documents (*id.*, PageID.696-709), four of which were invoices to customers (*id.*, PageID.705-08 (the customers included Lenoir

---

[13]Stryker indicates that Exhibit A to its motion contains Mr. Prickett's responses to Stryker's interrogatories.  (*See* Stryker's Br. at 3, ECF No. 108, PageID.658).  Instead, the exhibit appears to be a duplicate of Exhibit B:  Mr. Prickett's responses to Stryker's document requests.  (*Compare* Exh. A, ECF No. 108-1, *with* Exh. B, ECF No. 108-2).

Memorial Hospital, Atlantic Gastro, and SSHG)).[14]   None of these invoices match the names of the customers listed in his response to document request 5, as quoted above.

When asked in his deposition how many invoices or bills he issued for PCMR since January 1, 2013, to the date of the deposition, Mr. Prickett responded:  "Five or six I would say.  I mean, just a rough number, the best I can recall."  (Prickett Dep. at 18, ECF No. 108-4, PageID.721).  He testified that he kept copies of PCMR bills in a filing cabinet at his home.  (*Id.*).  Mr. Prickett confirmed under oath that the four invoices identified above (PageID.705-08) were the only ones PCMR issued.  His testimony in this regard is worth quoting:

> Q.    These are the only invoices that you produced in this litigation in response to our discovery request –
>
> A.    Yes.
>
> Q.    – for Lenoir Memorial Hospital, Atlantic Gastro, SSHG, which what does that stand for?
>
> A.    Select Specialty Hospital Group.
>
> Q.    And that's it.  These are the only invoices that PCMR issued?
>
> A.    Yes.
>
> Q.    Since its inception in 2014?
>
> A.    That's right.
>
> Q.    You never did any other work for any other hospitals?
>
> A.    No.

---

[14]While it appears at first glance that there is a fifth invoice at PageID.709, it is a duplicate of the invoice at PageID.708.

> Q.   So, for example, why isn't there something for Nash General Hospital or Wilson Medical?
>
> A.   There is not.
>
> Q.   Why isn't there?
>
> A.   There hasn't been any work.

(Prickett Dep. at 99-100, ECF No. 108-4, PageID.741).

As is evident from the discussion in sections 1-3, above, this testimony is demonstrably false.  More to the point, Mr. Prickett's production of four invoices was a sham, and his failure to produce any of the invoices Stryker obtained from Nash General Hospital, Wilson Medical Center, and Atlantic Gastroenterology, an indisputable violation of the December 18, 2014, compulsion order.

Mr. Prickett's assertion that he complied with his discovery obligations by providing Stryker with "mirror images" of his computer hard drives and other electronic devices (Defs' Br. at 7, ECF No. 144, PageID.1218) is without merit.  First, the mirror images are only as good as what they reflect.  If the discoverable documents were not contained in the hard drives of the electronic devices at the time the mirror images were made, producing the mirror images accomplishes nothing.  Notably, Mr. Prickett does not contend that the Nash General Hospital, Wilson Medical Center and Atlantic Gastroenterology invoices were included in that electronic discovery.  To the contrary, he testified to the effect that these documents did not exist.  Second, Mr. Prickett testified that he kept copies of the PCMR invoices in a file cabinet in his home (Prickett Dep. at 18, ECF No. 108-4, PageID.721), not on his computer.

Mr. Prickett's sworn assurance that he "provided all responsive documents that [he] had in his possession" on December 18, 2014, the date the Court issued the compulsion order (Prickett Affidavit ¶ 10, ECF No. 144-1, PageID.1223), is not credible and it defies common sense. Moreover, Mr. Prickett ignores his responsibility to supplement his discovery responses. *See* FED. R. Civ. P. 26(e); *see also* FED. R. CIV. P. 37(a)(4) ("[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond."). It is evident from the documents Stryker obtained through third-party discovery that Mr. Prickett continued to send PCMR invoices to Nash General Hospital and Wilson Medical Center after the compulsion order issued. (*See* Exh. E, ECF No. 108-5, PageID.807-28 (Nash General Hospital invoices dated January 6, 2015, to January 7, 2016); Exh. F, ECF No. 108-6, PageID.867-975 (Wilson Medical Center invoices dated January 12, 2015, to December 24, 2015)).

Finally, Mr. Prickett's contention that Stryker suffered no harm from his failure to comply with the compulsion order, as it has obtained the invoices through third-party discovery (Defs' Br. at 7, ECF No. 144, PageID.1218), misses the point. Mr. Prickett had the obligation to produce the discovery, and to comply with the Court's compulsion order, regardless of whether Stryker had alternative means of obtaining it. Moreover, Stryker has suffered harm, including the costs associated with the third-party discovery, and it should be compensated for those costs.

The sanctions for violation of discovery orders are found in Federal Rules of Civil Procedure, which includes a contempt citation. FED. R. CIV. P. 37(b)(2)(A)(vii). Given

Mr. Prickett's other, related contumacious acts, the appropriate course of action is to treat his violation of the compulsion order as civil contempt.

### B.     Recommended Sanctions

Civil contempt accomplishes three goals, all of which are needed here:  (1) it vindicates the Court's authority, at least incidentally; (2) it coerces defendants' compliance with the Court's preliminary injunction; and (3) it compensates Stryker for the injuries it has sustained as a result of defendants' violations of the preliminary injunction and the compulsion order.  *See TWM Mfg. Co., Inc.,* 722 F.2d at 1273 ("Although civil contempt may serve incidentally to vindicate the court's authority, its primary purposes are to compel obedience to a court order and compensate for injuries caused by noncompliance." (citing *McCrone*, 307 U.S. at 64; *Falstaff Brewing Corp. v. Miller Brewing Co.* 702 F.2d 770, 778 (9th Cir. 1983)).  These goals can be accomplished through a civil contempt order requiring defendants: (1) to disgorge any profits they have obtained through the violations of the preliminary injunction; (2) to post a forfeitable bond against future violations of the preliminary injunction; and (3) to pay Stryker's costs of bringing the motion for contempt, as well as all third-party discovery it conducted in connection with this motion.

Accordingly, and after giving defendants an opportunity to show cause as to why the Court should not take such action, I recommend that Judge Bell consider issuing an order requiring the parties to do the following:

> 1.     Defendants Prickett and PCMR shall, within thirty days of the date of the Court's Civil Contempt Order, file a statement with the Court enumerating the actual costs incurred in generating the

gross revenues relating to the provision of service, repairs, or sales of parts, after October 22, 2014, to Nash General Hospital, Wilson Medical Center, and Atlantic Gastroenterology (including any service agreement), as reflected in the invoices contained in Exhibits E, F, and G to Stryker's motion for contempt (ECF No. 108-5, 108-6, and 108-7). The burden shall be on defendants to prove actual costs. The defendants will be ordered to pay to Stryker the net amount, as disgorgement of the profits defendants obtained in violation of the Court's preliminary injunction.

2. Defendants shall, within thirty days of the date of the Court's Civil Contempt Order, post a surety bond in the amount of $25,000 to ensure future compliance with the preliminary injunction. Defendants shall have the burden of proving an inability to post a bond in this amount.

3. Stryker shall, within fourteen days of the date of the Court's Civil Contempt Order, file with the Court a petition for reasonable costs, including attorneys' fees, associated with the motion for contempt (ECF No. 107) and the third-party discovery, including Rule 30(b)(6) depositions, relating to the invoices obtained from Nash General Hospital, Wilson Medical Center, and Atlantic Gastroenterology.

4. Defendants shall, within fourteen days of the filing of plaintiffs' petition for costs, file a response; any issue not timely presented in the response will be deemed waived.

Respectfully submitted,

Date:  July 22, 2016          /s/ Phillip J. Green
PHILLIP J. GREEN
United States Magistrate Judge

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008). General objections do not suffice. *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).