UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STRYKER CORPORATION, et al.,

      Plaintiff,                                   Hon. Robert Holmes Bell

v.                                                    Case No. 1:14-cv-01000-RHB

WILLIAM PRICKETT, et al.,

      Defendants.
_____/

## MEMORANDUM OPINION

This matter is before the Court on plaintiff Stryker Corporation's ("Stryker") Petition for Attorneys' Fees and Costs (ECF No. 177), filed pursuant to the Court's order of civil contempt against defendants William Prickett and Physician's Choice Medical Repair, Inc. ("PCMR") (ECF No. 172). Stryker seeks $32,357.60 in fees and $3,769.24 in costs associated with its motion for contempt and the related third-party discovery. (ECF No. 177, PageID.2380). Defendants have not responded to the petition.

Also before the Court is defendants' Statement Regarding Costs. (ECF No. 180). The Court ordered defendants to provide the actual costs incurred in generating revenue from certain hospitals, which was obtained in violation of the preliminary injunction, for the purpose of determining the amount of profits to be disgorged. (ECF No. 172, PageID.1986). Defendants claim $46,205.12 in costs (ECF No. 180, PageID.2437), and they assert that invoices reflecting a total of $58,193.76 in revenue

should be exempt from disgorgement, as they were "not wholly attributable to the provision of Stryker-related services, repairs, or parts." (ECF No. 180-1, PageID.2439). Stryker objects to the statement of costs, arguing that defendants failed to independently verify the costs claimed, thus failing to meet their burden of proof. (ECF No. 181, PageID.2441-42). Stryker also objects to defendants' assertion that some of the invoices should be exempt from disgorgement. (*Id.*, PageID.2442-43).

Having considered Stryker's petition for fees and costs, including its supporting materials, and in light of defendants' failure to object, Stryker's petition will be granted in full. For the reasons articulated herein, Stryker's objections to defendants' statement of costs will be sustained.

## **Procedural and Factual Background**

On June 17, 2016, Stryker filed a motion for contempt against defendants William Prickett and PCMR. (ECF No. 107). Stryker accused defendants of violating the Court's October 22, 2014, preliminary injunction (ECF No. 24), as well as the Court's December 18, 2014, order compelling defendants to produce certain discovery (ECF No. 40). (Pltfs' Br. at 1, ECF No. 108, PageID.656). Specifically, Stryker complained that defendant William Prickett violated the preliminary injunction by continuing to service Stryker patient handling equipment at Nash General Hospital, Wilson Medical Center, and Atlantic Gastroenterology. (*Id.*, PageID.659-60; *see* Invoices at ECF No. 108-5, 108-6, and 108-7, respectively). Defendants opposed the motion. (*See* ECF No. 144).

The undersigned judicial officer conducted a lengthy hearing on July 11, 2016. (Minutes, ECF No. 148). On July 22, 2016, the undersigned entered a Report and Recommendation ("R&R") certifying facts in favor of civil contempt, and recommending that the Honorable Robert Holmes Bell adjudge defendants to be in civil contempt. (ECF No. 152). The undersigned also recommended that Judge Bell consider imposing certain enumerated sanctions. (*Id.*, PageID.1326-27).

On August 18, 2016, Judge Bell conducted a hearing on Stryker's motion for contempt. (Minutes, ECF No. 171). During this hearing, defendants confirmed that they had no objection to the R&R or to the sanctions recommended therein. (*See* Aug. 19, 2016, Order, ECF No. 172, PageID.1985). After reviewing the R&R *de novo*, as required by 28 U.S.C. § 636, Judge Bell adopted it as the findings and conclusions of the Court. (*Id.*, PageID.1986).

Judge Bell ordered, among other things, that Stryker file a petition "for reasonable costs, including attorneys' fees, associated with the motion for contempt (ECF No. 107) and the third-party discovery, including Rule 30(b)(6) depositions, relating to the invoices obtained from Nash General Hospital, Wilson Medical Center, and Atlantic Gastroenterology." (ECF No. 172, PageID.1987). Judge Bell advised defendants that failure to file a timely response will result in a waiver of the issues raised in the petition. (*Id.*). Defendants have filed no response.

Judge Bell also ordered, as a sanction, that defendants disgorge profits they obtained from the three hospitals in question (ECF No. 172, PageID.1986), which are reflected in invoices contained in Exhibits E, F, and G to Stryker's contempt motion

(ECF No. 108-5, 108-6, and 108-7, respectively). The profits are to be determined by subtracting defendants' "actual costs," as proven by defendants, from the amounts billed in the invoices. (*See id.*).

## Discussion

### A.  Stryker's Petition for Attorneys' Fees and Costs

Under the Federal Rules of Civil Procedure, the Court has discretion to impose a number of sanctions for violations of its discovery orders. *See* FED. R. CIV. P. 37(b)(2)(A). Among those sanctions are "treating as contempt of court the failure to obey any [such] order." FED. R. CIV. P. 37(b)(2)(A)(vii). In addition, "the court must order the disobedient party . . . to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." FED. R. CIV. P. 37(b)(2)(C). A finding of civil contempt for violating the Court's preliminary injunction provides an independent basis for awarding fees and costs resulting from the violation. *See TWM Mfg. Co. v. Dura Corp.*, 722 F.2d 1261, 1273 (6th Cir. 1983) ("The award of attorney's fees and expenses to a successful movant may be appropriate in a civil contempt proceeding.").

The Court having already found a sufficient basis for awarding fees and costs, the only remaining issue is the reasonableness of the amount sought. The Supreme Court has explained that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433

(1983). This is the "lodestar method" of calculation. *See Perdue v. Kenny A.*, 559 U.S. 542, 546 (2010); *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000); *Isabel v. City of Memphis*, 404 F.3d 404, 415 (6th Cir. 2005).[1]

The Sixth Circuit has identified a dozen factors to assist trial courts in determining the reasonableness of an hourly rate, as well as the number of hours worked:

> (1) time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time and limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in "similar cases."

*Isabel*, 404 F.3d at 415. This Court has considered each of these factors in analyzing the reasonableness of Stryker's fee petition. The party requesting attorney's fees bears the burden of establishing that the number of hours and the hourly rate are reasonable. *Hensley*, 461 U.S. at 437.

1. <u>The Reasonableness of the Hourly Rates Sought</u>

The Court begins this analysis by determining a reasonable hourly rate. "Ordinarily, courts look to '[rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Hadix v. Johnson*,

---

[1] The Sixth Circuit "rel[ies] on precedents involving attorney fees without regard to whether they involved Title VII or some other federal statute." *Isabel v. City of Memphis*, 404 F.3d 404, 415 (6th Cir. 2005).

65 F.3d 532, 536 (6th Cir. 1995) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)). There is a presumption in favor of the community market rates. *See, e.g., Blum*, 465 U.S. at 895 ("'[R]easonable fees' . . . are to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel."); *Adcock-Ladd*, 227 F.3d at 350 ("A trial court, in calculating the 'reasonable hourly rate' component of the lodestar computation, should initially assess the 'prevailing market rate in the relevant community.'" (quoting *Blum*, 465 U.S. at 895)) (emphasis in *Adcock-Ladd*); *Coulter v. Tennessee*, 805 F.2d 146, 149 (6th Cir. 1986) ("We . . . apply the principle that hourly rates for fee awards should not exceed the market rates necessary to encourage competent lawyers to undertake the representation in question."). The so-called "community market rule" has the "principle virtue of being the easiest way to cope with the 'inherently problematic' task of ascertaining a reasonable fee in a situation where 'wide variations in skill and reputation render the usual laws of supply and demand inapplicable[.]'" *Hadix*, 65 F.3d at 536 (quoting *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990)).

Having determined that the community market rule applies here, the next step is determining the prevailing market rate in the Grand Rapids, Michigan, area. In order to determine the local market rate, the court should rely on a combination of its own expertise and judgment. *Garber v. Shiner Enterprises, Inc.*, 2007 WL 4557857, *1 (W.D. Mich. Dec. 21, 2007) (citing *United States ex rel. Educ. Career Dev., Inc. v. Cent. Fla. Reg'l Workforce Dev. Bd., Inc.*, 2007 WL 1601747, *6 (M.D. Fla. June 1, 2007)).

The court may consider proof of rates charged in the community under similar circumstances, as well as opinion evidence of reasonable rates. *See Garber*, 2007 WL 4557857 at *1 (citing *Educ. Career Dev., Inc.*, 2007 WL 1601747 at *3). Other relevant sources include the attorney's actual billing rate and fee awards from prior cases. *See Payton v. New Century Mortgage Corp.*, 2004 WL 524693, at *2 (N.D. Ill. Mar.11, 2004).

Stryker seeks reimbursement of its attorneys' fees for two of its counsel at hourly rates of $495 and $334, respectively. (ECF No. 177, PageID.2377). Stryker cites to a number Western District of Michigan cases approving fee rates between $375 and $450. (*See id.* (citing *Duran v. Sara Lee Corp.*, 2014 WL 12279518, *2 (W.D. Mich. March 5, 2014) (awarding $450 per hour); *Waldo v. Consumers Energy Co.*, 2012 U.S. Dist. LEXIS 45058 (W.D. Mich. March 30, 2012) (awarding $400 per hour); *Huizinga v. Genzink Steel Supply & Welding Co.*, 984 F. Supp. 2d 741 (W.D. Mich. 2013) (awarding $375 per hour); *In re Stover*, 439 B.R. 683 (W.D. Mich. 2010) (awarding $450 per hour to lead counsel); *Worthing v Reliance Std. Life Ins. Co.*, 2009 U.S. Dist. LEXIS 52296 (E.D. Mich. 2009) (awarding $400 per hour); *Streamline Packaging Sys. v. Vinton Packaging Grp.*, Inc., 2008 U.S. Dist. LEXIS 5523, at *6 (W.D. Mich. Jan. 25, 2008) (awarding $390 per hour to lead counsel); *Crosby v. Bowater Inc. Retirement Plan*, 262 F. Supp. 2d 804 (2003) (vacated on other grounds) (awarding $400 per hour)).[2]

---

[2]*But see Stryker Corp. v. Ridgeway*, 2015 WL 3969816, *5 (W.D. Mich. June 30, 2015) (finding a $300 hourly rate sufficient to compensate Stryker for a relatively simple, straightforward motion to compel).

The $495 hourly rate Stryker seeks for its lead counsel, Michael Wexler, is at the highest end of that obtained by attorneys in the Grand Rapids area. The 2014 edition of the State Bar of Michigan's Economics of Law Practice in Michigan reports that the 2013 billing rate for Grand Rapids attorneys in the 95th percentile was $510. *See* https://www.michbar.org/file/pmrc/articles/0000151.pdf (last accessed December 4, 2016). Mr. Wexler has sixteen years' experience representing Stryker in non-compete and trade secret litigation, having served the company as lead counsel in a number of such matters. (Wexler Decl. at ¶¶ 4-5, ECF No. 177-1, PageID.2384). The discounted billing rate he charges Stryker is $631. (*See id.* at ¶ 7). In light of Mr. Wexler's recognized expertise, and given that defendants have not challenged the rate sought, the Court will use the proposed $495 hourly rate for his work in this matter. Based on a review of Robin Marsh's declaration (ECF No. 177-2), and the lack of any objection, the Court finds that her $334 hourly rate is reasonable.

### 2.     The Reasonableness of the Hours Expended

The next inquiry addresses the number of hours claimed. In order to accept the claimed time expenditures, "the documentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." *United Slate, Tile & Composition Roofers Ass'n Local 307 v. G. & M. Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 n.2 (6th Cir. 1984).

The Court has considered the declarations of attorneys Michael Wexler (ECF No. 177-1) and Robyn Marsh (ECF No. 177-2), and it has reviewed the billing records

-8-

submitted in support of the fee petition (ECF No. 177-1, PageID.2387-2412). The total attorney time sought for bringing the contempt motion, conducting the third-party discovery, and in preparing the petition is 82.9 hours. (ECF No. 177, PageID.2378). This breaks down to 29.0 hours for Mr. Wexler and 53.9 hours for Ms. Marsh. (*Id.*). The time expended is reasonable to the purposes for which it was expended. Accordingly, and in light of the absence of any objection from defendants, the Court will compensate Stryker for the total time billed.

### 3. The Reasonableness of the Costs

Stryker seeks to recover $3,769.24 in costs its attorneys incurred for airfare, hotels, and meals while conducting the underlying third-party discovery in North Carolina and Ohio, as well as the Court's hearings on July 11, 2016, and August 18, 2016. (ECF No. 177, PageID.2379-80). The Court has reviewed Mr. Wexler's declaration and the supporting documentation. (*See* ECF No. 177-1). These costs appear reasonably related to the third-party discovery and Stryker's contempt motion, and defendants have lodged no objection. Accordingly, these costs will be awarded.

### B.     Defendants' Statement of Costs

As one of the contempt sanctions, the Court ordered that defendants disgorge all profits they obtained in violation of the preliminary injunction with respect to Nash General Hospital, Wilson Medical Center, and Atlantic Gastroenterology. (ECF No. 172). Accordingly, to assist in ascertaining the amount of profits to be disgorged, the Court ordered defendants to file:

> [A] statement with the Court enumerating the actual costs incurred in generating the gross revenues relating to the provision of service, repairs, or sales of parts, after October 22, 2014, to Nash General Hospital, Wilson Medical Center, and Atlantic Gastroenterology (including any service agreement), as reflected in the invoices contained in Exhibits E, F, and G to Stryker's motion for contempt (ECF Nos. 108-5, 108-6, and 108-7).

(ECF No. 172, PageID.1986). The Court noted that "[t]he burden shall be on Defendants to prove actual costs." (*Id.*).

The total amount of revenue reflected in the invoices is $112,217.05. (*See* ECF Nos. 108-5, 108-6, and 108-7).[3] Defendant William Prickett filed a statement of costs on behalf of defendants, asserting a total of $46,205.12 in costs. (ECF No. 180, PageID.2430-37; *see* William Prickett's Verification Under Oath, PageID.2437). Stryker objects to the lack of any supporting receipts, arguing that defendants have failed to meet their burden of proof. (ECF No. 181, PageID.2441-42). A review of defendants' filing confirms that it is simply a generic list of purported costs unsupported by documentation of any kind. (*See* ECF No. 180, PageID.2430-37).

Moreover, the identification of the purported costs is, for the most part, too cryptic to allow for any meaningful review. For example, Mr. Prickett includes approximately 100 entries for "parts" in which none of the "parts" are identified or linked to any invoice. (*See* ECF No. 180, PageID.2430-37). In the majority of the "parts" entries, Mr. Prickett does not identify the parts supplier. (*See id.*). The "fuel"

---

[3]Defendants' total of $133,642.82 (ECF No. 180, PageID.2437) includes duplicate invoices. Stryker acknowledges the partial duplication of invoices, and it asserts that the total amount should be $112,217.05 (ECF No. 181, PageID.2441 at n.1). The Court will use the lesser amount.

costs consist of the amounts Mr. Prickett purportedly paid to gas stations, apparently to fill his gas tank. Mr. Prickett makes no effort to explain how these fuel costs relate to any of the invoices at issue – and he provides no mileage information relating to his travel to any of the three hospitals involved. He includes charges for "cleaning supplies" without identifying the nature of the supplies, much less how they may have been used to generate the income reflected in the invoices.

In sum, Mr. Prickett's statement of costs is woefully inadequate, he having failed to heed the Court's admonition that he bears the burden of proof. He leaves the Court no choice but to sustain Stryker's objections. Common sense suggests that Mr. Prickett incurred actual costs in generating the income reflected in the invoices. Unfortunately, the Court cannot speculate as to the nature or reasonableness of those costs. By filing such a perfunctory statement of costs, Mr. Prickett has waived his right to challenge the invoices Stryker provided the Court. *See Clemente v. Vaslo*, 679 F.3d 482, 497 (6th Cir. 2012) (holding that issues " 'adverted to . . . in a perfunctory manner, unaccompanied by some effort at developed argumentation' " are waived (quoting *Langley v. DaimlerChrysler Corp.*, 502 F.3d 475, 483 (6th Cir. 2007) (internal quotation marks omitted)).

Mr. Prickett also seeks to exempt certain of the invoices relating to "Nash Health Care" (Nash General Hospital) and "Wilson Medical (Center)," totaling $58,193.76 in revenue, claiming that these invoices are not "*wholly attributable* to the provision of Stryker-related services, repairs, or parts." (ECF No. 180-1, PageID.2439) (emphasis supplied). Mr. Prickett does not explain what he means by this statement,

nor does he indicate to what extent the invoices are *partially* attributable to the provision of Stryker-related services, repairs, or parts. Accordingly, this issue is waived. *See Clemente*, 679 F.3d at 497; *Langley*, 502 F.3d at 483.

The Court need not dwell on Mr. Prickett's cryptic assertion, however. Among other things, the preliminary injunction prohibited defendants from "engaging in or participating in any employment or activity competitive with Stryker, insomuch as such activity is with, directed to or designed to provide services to, solicit or divert any of Stryker's customers and/or any customers that Prickett serviced while in Stryker's employ during the 24 months prior to June 30, 2014." (Oct. 22, 2014, Preliminary Injunction at ¶ 5, ECF No. 24, PageID.206). As this Court has already found, Mr. Prickett serviced both Nash General Hospital and Wilson Medical Center during the 24 months preceding his June 30, 2014, resignation from Stryker. (*See* R&R, ECF No. 152, PageID.1314-20). The Court also found that he continued servicing these hospitals after the entry of the preliminary injunction. (*Id.*).

The Court's contempt order requires the disgorgement of all profits made in violation of the preliminary injunction. (*See* ECF No. 172, PageID.1986). These profits are reflected in the invoices of all three hospitals, including Nash General Hospital and Wilson Medical Center. (*See id.*). It is irrelevant whether these profits are "wholly attributable to the provision of Stryker-related services, repairs, or parts." Accordingly, Stryker's objection to defendants' effort to exclude $58,193.76 in revenue is sustained.

## **Conclusion**

For the reasons set forth herein, Stryker's petition for attorney's fees and expenses (ECF No. 177) will be granted in full. Defendants shall be ordered to pay Stryker $32,357.60 in fees and $3,769.24 in costs.

Stryker's objections to defendants' statement regarding costs are sustained. Defendants shall be ordered to pay Stryker $112, 217.05 as disgorgement of profits obtained in violation of the preliminary injunction.

Date:  December 5, 2016                     /s/ Phillip J. Green
                                            PHILLIP J. GREEN
                                            United States Magistrate Judge