UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STRYKER CORPORATION et al.,

    Plaintiffs,

v.

WILLIAM PRICKETT et al.,

    Defendants.

                                  /

File No. 1:14-CV-1000

HON. ROBERT J. JONKER

## OPINION

Plaintiffs Stryker Corporation and Stryker Sales Corporation (collectively, "Stryker") brought this action against a former employee, William Prickett, and Prickett's business, Physician's Choice Medical Repair, Inc. ("PCMR"). Before the Court is Stryker's motion for default judgment. (ECF No. 199.) For the reasons stated herein, the motion will be granted in part.

### I.

Prickett was employed by Stryker as a field service technician, servicing Stryker patient-handling equipment, including: medical-treatment tables, stretchers, cots, hospital beds and emergency-rescue equipment. As part of his employment, he signed an agreement not to solicit business from Stryker customers or to work for a Stryker competitor for twelve months following the termination of his employment. He resigned from Stryker on June 30, 2014. Stryker brought this action in September 2014, alleging that Prickett had breached the terms of his employee agreement by providing services to Stryker customers, using Stryker's confidential pricing and customer information, and using special tools and parts that Prickett improperly retained after the end of his

employment. Stryker also alleged that Defendants were improperly using the Stryker name and mark by representing themselves as "Stryker Certified," and that Prickett had attempted to obtain additional Stryker parts through several Stryker employees.

On October 22, 2014, the Court entered a preliminary injunction prohibiting Defendants from using Stryker's name and from competing with Stryker by providing services to its customers. (ECF No. 24.) In August 2016, the Court found Defendants in contempt for violating a discovery order and the terms of the injunction. Defendants failed to produce invoices for work that Defendants performed from July 2014 to December 2015, despite an order to produce these documents. (R&R 19-25, ECF No. 152, adopted by the Court in ECF No. 172.) Defendants claimed that no such invoices existed, but Stryker obtained copies of the invoices from third parties. The invoices demonstrated that Defendants had provided services to Stryker customers in violation of the injunction. (*Id.* at 17, 19.) As a sanction for Defendants' conduct, the Court required Defendants to pay the gross revenue[1] reflected in the invoices from after the date of the injunction ($112,217.05), and to pay Stryker's attorney's fees and costs associated with the motion for contempt and the third-party discovery relating to the invoices ($36,126.84). (*Id.* at 27; Order Regarding Stryker's Pet. for Attorney's Fees & Objs. to Def.'s Statement of Costs, ECF No. 187.)

---

[1]The Court's sanction intended to disgorge Defendants' profits from the invoices, rather than their gross revenue, but Defendants did not meet their burden of proving the costs that should be deducted from this revenue. (12/15/2016 Mem. Op. 11, ECF No. 186.) Accordingly, gross revenue became the practical result. Congress has employed a similar damages mechanism in situations where the defense is uniquely well situated to provide the necessary cost data, and where equitable considerations readily support a gross revenue remedy if the defense cannot or will not shoulder the burden of proving the costs. *See, e.g.*, 17 U.S.C. § 504(b) (when a copyright owner is entitled to recover damages as a result of infringement, the owner "is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses . . .").

## II.

In the motion before the Court, Stryker seeks entry of a default judgment against Defendants for their failure to comply with the Court's orders. *See* Fed. R. Civ. P. 16(f)(1)(C) (permitting the Court to issue "any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney . . . fails to obey a scheduling or other order"); *see also* Fed. R. Civ. P. 37(b)(2)(A)(vi) (permitting the Court to enter default judgment as a sanction). Stryker has offered evidence that, even after the Court found Defendants in contempt for violating the preliminary injunction, they have continued to violate the injunction by servicing Stryker customers. For instance, in December 2016, a Stryker employee observed Prickett at a hospital that is one of Stryker's customers. Prickett was wearing a PCMR jacket and pushing a hospital bed out to the docking area, presumably in order to repair the bed off-site. (Poulk Decl., ECF No. 200-2.) Defendants do not dispute this evidence, or the natural inference arising from it. In addition to entry of a default judgment, Stryker seeks an award of its attorneys' fees for bringing its motion, and a permanent injunction prohibiting Defendants from: (a) using the Stryker mark and name; and (b) engaging in competitive conduct for one year from the date of entry of the default judgment.

### A. Money Judgment

A district court has the inherent power to sanction a party when that party exhibits bad faith. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-50 (1991). "A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Id.* at 44-45. Typically, before entering a default judgment due to a party's failure to obey court orders, the Court must consider the four factors set forth in *Regional Refuse Systems, Inc. v. Inland Reclamation Co.*, 842 F.2d 150 (6th Cir. 1988), namely: (1) whether the party's failure to obey is due to wilfulness,

bad faith, or fault; (2) whether the adversary was prejudiced by the party's failure to obey; (3) whether the party was warned that failure to obey could lead to default judgment; and (4) whether less dramatic sanctions were imposed or considered before default judgment was ordered. *See id.* at 155. In this case, however, Defendants do not object to entry of a default judgment for money damages. Moreover, there is a "'clear record of delay or contumacious conduct'" by Defendants. *See Pelz v. Moretti*, 292 F. App'x 475, 479 (6th Cir. 2008) (quoting *Freeland v. Amigo*, 103 F.3d 1271, 1277 (6th Cir. 1997)). Defendants have already been found in contempt for violating multiple Court orders, including the preliminary injunction, and it appears that the Court's previous sanctions have had no impact. Therefore, a default judgment against Defendants in the amount of the Court's order for contempt sanctions (ECF No. 187), plus Plaintiffs' reasonable attorney's fees for bringing the motion for default judgment, is appropriate.

**B. Permanent Injunction**

Defendants object to Stryker's motion only to the extent that it seeks a permanent injunction prohibiting Defendants from engaging in competitive conduct for an additional year. Defendants assert that the non-compete and non-solicitation provisions in the employee agreement expired on June 30, 2015, and that Stryker should not be permitted to extend this term, particularly in light of the fact that Stryker has already been awarded damages for Defendants' competitive conduct. Defendants contend that Stryker is essentially asking the Court to impose a four-year term (from 2014 to 2018), which goes well beyond the one-year term agreed upon by parties in the employee agreement.

Generally, in order to obtain a permanent injunction, a party must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are

4

inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). "The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court[.]" *Id.* The Court is satisfied that the considerations support a permanent injunction that prohibits Defendants from using Stryker's name and reputation in pursuit of their own business, but that the considerations do not support any further direct prohibition on good faith business competition.

1. Extended Non-Compete

Prickett resigned from Stryker in 2014. His agreement prevented him from competing with Stryker for one year after the end of his employment. After that, both parties were free to compete on a level playing field. Prickett breached his non-compete obligations to be sure. But it is now almost three years after the end of his employment with Stryker. After a period of time, a prohibition on competition by a former employee no longer protects the employer's "reasonable competitive business interests," and becomes an unreasonable restraint on trade. *See St. Clair Med., P.C. v. Borgiel*, 715 N.W.2d 914, 919 (Mich. Ct. App. 2006). "To be reasonable in relation to an employer's competitive business interest, a restrictive covenant must protect against the employee's gaining some unfair advantage in competition with the employer, but must not prohibit the employee from using general knowledge or skill." *Id.* Among other things, a restrictive covenant can protect against the loss of customers, protect the employer's investment in specialized training of the employee, and protect the employer's confidential information. *See id.*

In this case, any unfair advantage that Prickett enjoyed in the marketplace as a result of his former employment with Stryker has surely dissipated. He allegedly used his knowledge of Stryker's pricing to negotiate new contracts with Stryker's customers, but that knowledge is now stale. He also took advantage of customer relationships that he had developed in the course of working for Stryker, but by now Stryker has had an opportunity to repair those relationships and to make clear to its customers that Prickett is no longer associated with Stryker. Moreover, after a year, both parties anticipated open competition for the relationship. This is not a case where the former employee maintains an unfair advantage because he possesses valuable trade secrets or important confidential information of the employer. *Cf. Overholt Crop Ins. Serv. Co. v. Travis*, 941 F.2d 1361, 1371 (8th Cir. 1991) (permitting a permanent injunction in addition to liquidated damages where the defendants' possession of confidential customer information posed a threat of future loss of business). Nor does this appear to be a case where the former employee has such specialized skills or unique relationships with customers that he can divert significant business from his employer in the future. Indeed, Defendants' business is somewhat dependent upon access to a supply of parts that "cannot be readily obtained[.]" (*See* Compl. ¶ 52, ECF No. 1.) This is also not a case of a former salesperson with ability to move large books of business instantaneously to a new employer. Stryker has had both the means and the opportunity to recover whatever competitive footing it may have lost due to Prickett's departure and Defendants' subsequent conduct.

It is true that the Michigan Court of Appeals has held that, "in appropriate circumstances, the term of a noncompetition agreement may be extended beyond its stated expiration date." *Thermatool Corp. v. Borzym*, 575 N.W.2d 334, 338 (Mich. Ct. App. 1998).

> Specific performance of an agreement may be an appropriate remedy where enforcement of the promise is necessary to avoid injustice. In cases where a party has flouted the terms of a noncompetition agreement, the court should be able to fashion appropriate equitable relief despite the fact that the parties did not expressly provide for such relief in their agreement. Furthermore, as courts allowing extensions of the terms of noncompetition agreements have found, it may not be possible to determine monetary damages with any degree of certainty. Where this is the case, the breaching party should not be rewarded because the agreement has already expired.

*Id.* (citation omitted). It is also true that the parties to this non-compete expressly provided that the term of competition would be extended for each day of breach. (Employee Agreement § 8.1, ECF No. 1-1, PageID.30.) But neither the terms of the parties' agreement, nor the language of *Thermatool* trump the overarching considerations of equity that must guide the Court's decision in any particular case.

The Court is also mindful that Stryker will be receiving a damage award for at least some of Defendants' competitive activity. The Court's contempt sanction requires Defendants to pay Stryker the gross revenue reflected in certain invoices dated from October 2014 to December 2015. This sanction was primarily focused on vindicating the Court's orders, but it does function as a disgorgement remedy in much the same way as if Stryker received a judgment in its favor on its breach-of-contract claim. At a minimum, this weighs in favor of Defendants when considering the balance of hardships. To the extent that Stryker is concerned about any loss of goodwill associated with Defendants' use of the Stryker name, the permanent injunction will address this concern by prohibiting Defendants from unfairly using the Stryker name in connection with their products or services.

In short, Stryker has not demonstrated that extending the non-compete restriction for more time beyond its natural expiration would meaningfully protect its reasonable business interests, or

that its remedies at law are inadequate to protect those interests. And considering the likely hardship to Defendants resulting from an extension of the non-compete, as well as the public interest against extended restraints on competitive conduct by former employees, the Court is not persuaded that equity favors a permanent injunction which extends the non-compete for another year.

### 2. Use of Stryker's Name

Stryker also seeks to continue in a permanent injunction the existing restrictions of the preliminary injunction on Defendants' use of Stryker's name. Defendants do not oppose continued restrictions like this. The Court will, however, modify the existing restrictions to prevent them from serving as the functional equivalent of a ban on competition.

## CONCLUSION

The Court will enter a default judgment in favor of Plaintiffs and against Defendants for the monetary sanctions that Defendants do not contest, plus Plaintiffs' reasonable attorney's fees for bringing the motion for default judgment. The Court will also include in the judgment a permanent injunction preventing unfair use of Stryker's name. The Court will not further extend the restriction of good faith competition.

An order and judgment will enter in accordance with this Opinion.

Dated:      May 24, 2017                    /s/ Robert J. Jonker
                                            ROBERT J. JONKER
                                            CHIEF UNITED STATES DISTRICT JUDGE